**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN SOYBEAN ASSOCIATION, and PLAINS COTTON GROWERS, INC.,    ) ) ) | |
| *Plaintiffs*,    ) ) | |
| v.    ) ) | CASE NO. 1:20-cv-3190-RCL |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,    ) ) ) | |
| *Federal Defendants*, and    ) ) | |
| BASF CORPORATION, *et al.*,    ) ) | |
| *Defendant-Intervenors.*    ) ) | |

**FEDERAL DEFENDANTS' MOTION FOR PARTIAL DISMISSAL
OF PLAINTIFFS' AMENDED COMPLAINT**

Federal Defendants, U.S. Environmental Protection Agency ("EPA"); Michael S. Regan[1], in his official capacity as the EPA Administrator; and Marietta Echeverria, in her official capacity as Acting Division Director of the EPA, Office of Pesticide Programs, Registration Division (collectively, "Federal Defendants"), respectfully move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) to dismiss those claims in Plaintiffs' Amended Complaint (ECF No. 50) that Federal Defendants violated Section 7 of the Endangered Species Act ("ESA") by using certain application cutoffs and buffers–the "ESA Application Restrictions" and "ESA Buffers"–to make its effects determinations. All such claims must be dismissed because Plaintiffs failed to comply with the ESA's mandatory 60-day notice requirement before filing suit.

## INTRODUCTION

In October 2020, EPA registered three dicamba-based pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") for use "over-the-top" of cotton and soybean plants genetically modified to be dicamba tolerant ("Registrations"). Plaintiffs, the American Soybean Association and Plains Cotton Growers, Inc., mistakenly believe that certain temporal application limitations–June 30 and July 30 application cutoffs for application over the top of soybean and cotton crops–the ESA Application Restrictions–are "problematic" and exceed EPA's statutory authority. Dkt. 50 at 28-29; *see also id*. ¶¶ 5-8, 26-32, 40-4, 82, 84, 92, 94-95, 98-116, 120, 122-23, 127-131; Dkt. 50-1 ¶¶ 3, 26-28. Plaintiffs object on similar grounds to certain spatial 310-foot downwind and 57-foot omnidirectional buffers–the ESA Buffers– measured from the edge of agricultural fields inward, which EPA included to protect ESA listed

---

[1] Michael S. Regan is automatically substituted for Andrew R. Wheeler pursuant to Federal Rule of Civil Procedure 25(d).

species. *Id*. Both the ESA Application Restrictions, challenged in Count I, and the ESA Buffers, challenged as part of Count II, were essential components of EPA's ESA Effect Determinations and therefore crucial aspects of its compliance with ESA Section 7. Plaintiffs' challenges must be brought, if at all, pursuant to the ESA citizen-suit provision because they concern EPA's compliance with ESA Section 7 as an action agency. As such, Plaintiffs were required to provide EPA notice of their intent to sue, and then wait 60 days to allow the agency to consider the allegations and revisit or amend its decision if appropriate. 16 U.S.C. § 1540(g)(1)-(2). Plaintiffs did not do so here. Plaintiffs have therefore failed to comply with the mandatory and jurisdictional notice requirements of the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(2)(A)(i).

The Court should reject Plaintiffs' misguided contention that these are not ESA claims but rather an Administrative Procedure Act ("APA") "maladministration" claims, akin to the one discussed in *Bennett v. Spear*, 520 U.S. 154 (1997). The U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") are the two agencies charged with implementing the ESA and thus are the only two agencies that can "administer" the Act. EPA does not "administer" the ESA and so cannot "maladminister" it. Given Plaintiffs' failure to comply with the ESA's citizen suit requirements, the Court should dismiss all ESA claims.

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted the ESA in 1973 to, among other things, conserve endangered and threatened species and their habitat. *See* 16 U.S.C. §§ 1531(b), 1532(6), 1532(20), 1533. ESA Section 7(a)(2) requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated

critical habitat. *Id*. § 1536(a)(2). To help ensure compliance with this requirement, ESA Section 7(a)(2) and its implementing regulations delineate a process for determining the biological impacts of a proposed action known as ESA Section 7(a)(2) consultation. *Id.* § 1536; 50 C.F.R. pt. 402.

Through this process, an agency proposing an action ("the action agency") must first determine whether its action "may affect" a listed species or the designated critical habitat for a listed species. 50 C.F.R. §§ 402.14, 402.46. If the action agency determines that its proposed action will have "no effect" on a listed species or its designated critical habitat, ESA Section 7(a)(2) consultation is not triggered, and the process comes to an end. *Id*. § 402.12; *Nat'l Fam. Farm Coal. v. U.S. EPA*, 966 F.3d 893, 922 (9th Cir. 2020) (citing *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019 (9th Cir. 2009)). This is known in ESA parlance as a "no effect" determination. A court's review of whether an agency's no effect determination was arbitrary and capricious turns on "whether the [agency] 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.' " *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011) (citation omitted); *Am. Forest Res. Council v. Caswell,* 631 F. Supp. 2d 30, 32 (D.D.C. 2009) (action agency's no effect determination "obviates the ESA's consultation requirement unless it is found to be an abuse of discretion." (citations omitted)).

Where the action agency determines that its action "may affect" listed species or designated critical habitat, it must consult with FWS and/or NMFS ("the consulting agencies"), depending on the species involved. 50 C.F.R. §§ 402.13, 402.14. There are two types of consultation: informal and formal. Informal consultation is an optional process that includes all discussions, correspondence, etc., between the action agency and consulting agency undertaken

to assist in determining whether formal consultation is required. *Id*. § 402.13(a). If, during

informal consultation, the consulting agency concurs with the action agency's determination that

the action is not likely to adversely affect listed species or critical habitat (a "may affect, not

likely to adversely affect" finding), the consultation process is terminated, and no further action

is necessary. *Id*. On the other hand, if an action agency determines that its actions "may affect"

and are likely to adversely affect a listed species or its critical habitat, the agency must consult

formally with FWS and/or NMFS. 50 C.F.R. §§ 402.01, 402.14(a)-(b).

If an entity wishes to challenge an action agency's compliance with its ESA Section

7(a)(2) obligations, including any "no effect" determinations (as EPA did here), they must abide

by the requirements of the ESA's citizen suit provision, which provides (as relevant here) that:

> (1) . . . any person may commence a civil suit on his own behalf—

> (A) to enjoin any person, including the United States and any other governmental
> instrumentality or agency . . . , who is alleged to be in violation of any provision
> of this chapter or regulation issued under the authority thereof; . . .

> The district courts shall have jurisdiction, without regard to the amount in
> controversy or the citizenship of the parties, to enforce any such provision or
> regulation, or to order the Secretary to perform such act or duty, as the case may
> be.

> (2)(A) No action may be commenced under subparagraph (1)(A) of this section—

> (i) prior to sixty days after written notice of the violation has been given to the
> Secretar[ies] [of the Interior or Commerce], and to any alleged violator of any
> such provision or regulation[.]

16 U.S.C. § 1540(g)(1)-(2)(A)(i); *Sierra Club v. Salazar*, 961 F. Supp. 2d 1172, 1177-79 (W.D.

Wash. 2013) (explaining that when federal agency is operating in capacity as action agency to

comply with ESA Section 7, challenges to compliance with ESA Section 7 must be brought

pursuant to ESA citizen suit) (first citing *Env't Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d

1073 (9th Cir. 2001); then citing *Turtle Island Restoration Network v. NMFS*, 340 F.3d 969 (9th

Cir. 2003)); *Ctr. for Biol. Div. v. Ross*, -- F. Supp. 3d --, 2020 WL 1809465, *1 (D.D.C. Apr. 9,

2020) (explaining that if action agency finds its action "may affect listed species," it must engage in consultation with consulting agency, FWS or NMFS).

## FACTUAL BACKGROUND

On July 2, 2020, Defendant-Intervenors, Bayer CropScience LP ("Bayer") and BASF Corporation ("BASF") individually submitted applications to EPA for new registrations of dicamba-based pesticides, Bayer's XtendiMax and BASF's Engenia, for use on cotton and soybean plants genetically modified to tolerate the pesticide active ingredient dicamba. Dkt. 1-1 at 3.[2] On August 12, 2020, Defendant-Intervenor Syngenta Crop Protection, LLP submitted a separate application for amendment of its registration of a pesticide product containing dicamba named Tavium to allow its continued use on dicamba-tolerant cotton and soybean plants. *Id*. On October 27, 2020, after conducting an extensive analysis, EPA approved the applications and registered XtendiMax and Engenia, and amended the Tavium registration, under Section 3(c)(5) of FIFRA.[3]

---

[2] EPA's registration of uses of dicamba-based pesticides for over-the-top use on dicamba-tolerant cotton and soybeans dates to 2016. Dkt. 50-10 at 8-11.

[3] Dkt. 50-1 at 6; *see generally* Dkt. 50-1 (EPA's Oct. 27, 2020, Memorandum Supporting Decision to Approve Registration for the Uses of Dicamba on Dicamba Tolerant Cotton and Soybean); Dkt. 50-3 (EPA's Oct. 27, 2020, Notice of Pesticide Registration to BASF regarding Engenia pesticide product); Dkt. 50-4 (EPA's Oct. 27, 2020, Notice to Syngenta Crop Protection, LLC regarding registration of A21472 Plus VaporGrip Technology); Dkt. 50-5 (EPA's Oct. 27, 2020, Notice to Bayer Cropscience LP regarding registration of XtendiMax with VaporGrip Technology); Dkts. 50-6 & 50-7 (EPA's Oct. 26, 2020, Assessment of the Benefits of Dicamba Use in Genetically Modified, Dicamba Tolerant Cotton and Soybean Production, respectively); Dkt. 50-8 (EPA's Oct. 26, 2020, Dicamba Use on Genetically Modified Dicamba-Tolerant (DT) Cotton and Soybean: Incidents and Impacts to Users and Non-Users from Proposed Registrations); Dkt. 50-9 (EPA's Oct. 27, 2020, Dicamba: Consideration of Newly Submitted Mutagenicity Data and Human Health Risk Assessment Summary); Dkt. 50-10 (EPA's Oct. 26, 2020, Dicamba DGA and BAPMA salts – 2020 Ecological Assessment of Dicamba Use on Dicamba-Tolerant (DT) Cotton and Soybean Including Effects Determinations for Federally Listed Threatened and Endangered Species).

To address the ESA requirements for these registration actions, EPA determined that specific control measures were necessary to support a "no effect" finding. These measures were integrated into each registration action. EPA's Effects Determinations involved species-specific determinations for ESA-listed endangered and threatened species and designated critical habitat. Dkt. 50-1 ¶¶ 3, 26-28. As part of this process, EPA evaluated the potential for off-field transport of dicamba by the combination of spray drift (movement of droplets during application) and vapor-phase transport (movement of volatilized dicamba anytime during or after application), taking into account the measures intended to control such off-field transport ("control measures") mandated on the product labeling. *Id*. at 26. These control measures included, in counties where ESA-listed non-monocot plants or designated critical habitats are found, a mandatory 310-ft in-field downwind spray drift setback (or buffer) to address the combination of drift of fine liquid droplets and vapor-phase transport, and an in-field 57-ft omnidirectional volatile emissions application buffer to address vapor-phase transport in absence of spray drift. *Id*. at 27 (referring to ESA Buffers). This 57-ft omnidirectional volatile-emissions application buffer, in combination with the temporal prohibition against application of Tavium, Xtendimax, and Engenia after June 30 (for soybeans) and July 30 (for cotton) ("ESA Application Restrictions"),[4] and a host of other control measures, collectively allowed EPA to determine that there would be "no discernible effects for listed species off of the treated field." *Id*. at 26. Therefore, EPA made twenty-two "no effect" determinations and one "may affect, not likely to adversely affect" determination

---

[4] This temporal limitation reduces the number of potential application days with high temperature conditions that favor volatility. *Id*. at 28. EPA separately imposed a 240-foot downwind buffer for all applications outside of counties containing ESA-listed non-monocot plants and designated critical habitats ("FIFRA Buffers").

("Effects Determinations"). *Id.* at 28.[5] EPA's Effect Determinations were based on the

mandatory ESA Application Restrictions and ESA Buffers, and are the agency's basis for

complying with ESA Section 7(a)(2).

**STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction, possessing only those powers specifically

granted to them by either the U.S. Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited

jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction[.]" *Id.* (citations omitted); *Keepseagle v. Vilsack*, 815 F.3d 28, 32 (D.C. Cir. 2016).

In a facial challenge regarding the court's jurisdiction brought under Federal Rule of Civil

Procedure 12(b)(1), the court is required to "accept as true all of the factual allegations contained

in the complaint." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) (citation

omitted). But courts "may consider materials outside the pleadings in deciding whether to grant a

motion to dismiss for lack of jurisdiction." *Id.* (citation omitted). If a court determines that it

lacks subject matter jurisdiction to hear and decide a claim, the claim must be dismissed. Fed. R.

Civ. P. 12(b)(1).

A challenge brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the claims asserted in a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[5] EPA obtained FWS' concurrence on its one "may affect, not likely to adversely affect" determination. *Id.*

570 (2007)). A claim is facially plausible when there are sufficient factual allegations to draw

"the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citation omitted). Although a court must accept as true the factual allegations in the

complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation,"

and a "formulaic recitation of the elements of a cause of action" is not enough. *Twombly*, 550

U.S. at 555. Moreover, a complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

(alteration in original) (citation omitted).

**ARGUMENT**

Plaintiffs allege violations of ESA Section 7, under which EPA is an action agency.

Plaintiffs maintain that the EPA exceeded its statutory authority under the ESA in calculating the

restrictions needed to reach its determinations that the registrations of Tavium, Xtendimax, and

Engenia would have "no effect" on ESA-listed species. Dkt. 50 at 28-29; *see also id*. ¶¶ 5-8, 26-

32, 40-4, 82, 84, 92, 94-95, 98-116, 120, 122-23, 127-131; Dkt. 50-1 ¶¶ 3, 26-28. These are ESA

citizen-suit claims, and require 60-days' notice prior to filing suit, which Plaintiffs failed to

provide. These claims therefore must be dismissed.

**I.      THE COURT LACKS JURISDICTION OVER PLAINTIFFS' ESA CITIZEN-SUIT CLAIMS DUE TO THE FAILURE TO COMPLY WITH 16 U.S.C. § 1540(G)(2)(A).**

The ESA's waiver of sovereign immunity is explicit: "No action may be commenced

under [the ESA citizen suit provision] . . .  prior to sixty days after written notice of the violation

has been given . . . ."16 U.S.C. § 1540(g)(2)(A)(i). Plaintiffs have failed to provide EPA with

such a notice letter. They filed their lawsuit alleging that the ESA Application Restrictions and

ESA Buffers exceed EPA's authority under the ESA. Their claims concerning EPA's Effects

8

Determinations, ESA Application Restrictions and ESA Buffers must be dismissed for violation

of the ESA's 60-day notice requirement. This result cannot be avoided by camouflaging their

claims as APA claims.

      **A.      The Notice Requirement Is Jurisdictional; Violation Requires Dismissal.**

      Plaintiffs' failure to provide notice of their intent to sue and then wait 60 days acts as an

absolute bar to bringing suit under the ESA. *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26

(1989) ("The language of this provision could not be clearer . . . [a]ctions commenced prior to 60

days after notice are 'prohibited.'"); *Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 87 (D.D.C.

2014); *Rsch. Air, Inc. v. Norton*, No. 05-cv-623-RMC, 2006 WL 508341, at *10-11 (D.D.C. Mar.

1, 2006); *accord Safari Club Int'l v. Jewell*, 960 F. Supp. 2d 17, 78 (D.D.C. 2013); *see also*

*Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 13 (D.D.C. 2009) (noting that "The Supreme

Court has held that similar statutory notice provisions are mandatory and cannot be waived.")

(citing *Hallstrom,* 493 U.S. at 31); *Common Sense Salmon Recovery v. Evans*, 329 F. Supp. 2d

96, 104 (D.D.C. 2004) (describing the notice requirement as "'mandatory conditions precedent to

commencing suit[,]' which 'a district court may not disregard . . . at its discretion'") (alterations

in original) (quoting *Hallstrom*, 493 U.S. at 31). A court may not use "flexible or pragmatic"

considerations to cure or waive notice defects. *Hallstrom*, 493 U.S. at 20-21. Rather, it must

dismiss the case until such time as adequate notice is provided and 60 litigation-free days pass.

*Id.* at 32. While this "strict construction of the 60-day notice requirement may appear to be

inequitable and a waste of judicial resources, … it is inescapable that, in this situation, courts

'lack authority to consider the equities.'" *Or. Wild v. Connor*, No. 6:09-cv-00185-AA, 2012 WL

3756327, at *4 (D. Or. Aug. 27, 2012) (ECF No. 66 at 10 ) (dismissing complaint for lack of

jurisdiction because plaintiff failed to comply with the ESA's 60 day notice provision) (quoting

*Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, No. CIV. S-05-0629 WBS-GGH., 2006 WL 3190518 at *10 (E.D. Cal. Nov. 2, 2006), *modified on other grounds,* 2007 WL 201248 (E.D. Cal. Jan. 24, 2007); *see also Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) (citing cases stating that courts must strictly interpret the 60-day notice provision as an absolute bar to suit).

EPA anticipates that Plaintiffs will argue that they have not run afoul of the ESA notice requirement because they allege violations of the APA, not the ESA. But Plaintiffs may not circumvent citizen-suit notice requirements by "by resorting to the APA." *Or. Nat. Res. Council v. U.S. Forest Serv.*, 834 F.2d 842, 851 (9th Cir. 1987) (citation omitted).

Plaintiffs' original Complaint stated that in including the ESA Application Restrictions and ESA Buffers, the EPA took action "under the ESA" and that the ESA Buffers are judicially reviewable "under the ESA." Dkt. 1 ¶¶ 24, 119, 120 (Plaintiffs alleging ESA Buffers were "action taken in compliance" with ESA); *see also id.* ¶¶ 26-30. Plaintiffs contended that the ESA Buffers "exceed [EPA]'s authority under FIFRA and the ESA and are unnecessary to comply with" the ESA. *Id.* ¶ 121.

While Plaintiffs have removed some references to the ESA, the Amended Complaint still includes an ESA statutory section and alleges ESA violations that fall within the citizen suit provision. Plaintiffs maintain incorrectly that the EPA–in calculating the extent and timing of the ESA Application Restrictions and ESA Buffers that undergird its Effect Determinations–imposed the ESA Application Restrictions and ESA Buffers, exceeding EPA's ESA Section 7 authority. *Id.* at 28-29, ¶¶ 6, 32, 40, 103; *cf. Conservation L. Found. v. Ross*, 422 F. Supp. 3d 12, 16-17 (D.D.C. 2019) ("In other words, the first step is for the 'action agency' . . . to determine whether its action 'may affect' a listed species (or critical habitat)."). Plaintiffs ask that the Court

declare "that the [ESA] Spray Buffers and [ESA] Application Restrictions are unnecessary to

ensure compliance with . . . the ESA, and other applicable law[.]" Dkt. 50 at 28-29; *see also id*.

¶¶ 26-32 (focusing on ESA Section 7 consultation process). Plaintiffs request that the Court find

that the ESA Application Restrictions and ESA Buffers exceed EPA's authority "under statute"

and remand the Effects Determinations to EPA. *Id*. ¶¶ 123, 131. The suite of documents

Plaintiffs attach to their Amended Complaint further confirms that Plaintiffs target an aspect of

EPA's ESA Effect Determinations and therefore the agency's compliance with ESA Section

7(a)(2). *See, e.g.*, Dkt. 50-1 at 3-5, 8, 13-14, 18, 21, 24, 28; Dkt. 50-10 at 8, 66-71, 301. Here,

Plaintiffs' attempt to "circumvent the notice requirement of the ESA by merely re-styling their

claims to fit within the APA" must be rejected. *Citizens Interested in Bull Run, Inc. v. Edrington*,

781 F. Supp. 1502, 1509 (D. Or. 1991).

## II.   DESPITE BEING MISLABELED APA MALADMINISTRATION CLAIMS, PLAINTIFFS' ARGUMENTS CONCERNING THE EFFECTS DETERMINATIONS, ESA APPLICATION RESTRICTIONS, AND ESA BUFFERS ARE ESA CITIZEN-SUIT CLAIMS.

The APA provides a cause of action to challenge a final agency action only where there is

no other adequate remedy. 5 U.S.C. § 704; *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)

("Congress did not intend the general grant of review in the APA to duplicate existing

procedures for review of agency action."); *Proie v. NMFS*, No. C11-5955BHS., 2012 WL

1536756, at *2 (W.D. Wash. May 1, 2012) (same, granting motion to dismiss). With respect to

the ESA, as relevant here, the citizen-suit provision authorizes any person to sue the United

States and any governmental instrumentality or agency where it "is alleged to be in violation of

any provision of this chapter or regulation issued under the authority thereof . . . ." 16 U.S.C. §

1540(g)(1)(A). As discussed below, because some of Plaintiffs' claims fall within this provision,

those portions of Counts I and II concerning the EPA's ESA Application Restrictions, ESA

Buffers, and Effects Determinations must be brought – if at all -- under the ESA, which provides

Plaintiffs an adequate remedy.

The distinction between ESA violations that are reviewable under the ESA's citizen-suit

provision, on the one hand, and those that are reviewable under the APA, on the other, was

articulated by the Supreme Court in *Bennett v. Spear*, 520 U.S. 154 (1997). As summarized by

the Ninth Circuit, the Supreme Court held that "challenges to the adequacy of biological

opinions against the Secretary of the Interior, when acting in his capacity as Administrator of the

[ESA], are not properly pled as citizen suit claims under Section 11(g)(1)(A) of the [ESA]." *Am.*

*Rivers v. NMFS,* 126 F.3d 1118, 1124 (9th Cir. 1997). The Court held that such claims could be

pled under the APA, which authorizes courts to set aside agency actions found to be "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." *Bennett*, 520 U.S.

at 154 (quoting 5 U.S.C. § 706(2)(A)). Such actions under the APA do not require compliance

with the ESA's 60-day notice requirement. *Am. Rivers*, 126 F.3d at 1124-25. Therefore, failure to

provide such notice does not deprive the court of jurisdiction to entertain such claims. *Id*. at

1125.

*Bennett* concerned a challenge to a FWS biological opinion issued after formal

consultation with the Bureau of Reclamation on the effects of the agency's operation of the

Klamath Irrigation Project–"a series of lakes, rivers, dams, and irrigation canals in northern

California and southern Oregon," 520 U.S. at 158, on two endangered fish species. *Id*. at 159.

FWS concluded in the opinion that the maintenance of certain minimum water levels within the

Project would "avoid jeopardy" to the species. *Id*. Certain parties with competing interests in

Project water levels sought judicial review of the biological opinion under the ESA's citizen-suit

provision.

The Supreme Court held that subsection (g)(1)(A) of the ESA citizen-suit provision's reference to any "violations" applies only to the actions of "regulated parties"–action agencies such as the Bureau of Reclamation or EPA, not to the actions of the consulting agencies (FWS or NMFS), which can constitute "maladministration of the ESA." *Id.* at 173-74; *see also Nat'l Ass'n of Home Builders v. Norton*, 298 F. Supp. 2d 68, 72 (D.D.C. 2003) (citing *Bennett*).

In this case, in contrast to the situation in *Bennett*, EPA could not have acted in "maladministration of the ESA," because action agencies like EPA do not "administer" the ESA, and no court has ever so found. *See Jewell*, 960 F. Supp. 2d at 59 (agreeing with government that claim arose "under the ESA citizen-suit provision because [plaintiff] allege[d] that [the action agency], . . . violated ESA Section 7 by failing to ensure that its action was not likely to jeopardize the continued existence of any endangered species." (citation omitted)); *Salazar*, 961 F. Supp. 2d at 1177-79. As the Ninth Circuit has noted, "citizen suits are a permissible means to enforce the substantive provisions of the ESA against *regulated parties* including government agencies like [EPA] in its role as the action agency." *Env't Prot. Info. Ctr.,* 255 F.3d at 1079 (citing *Bennett*, 520 U.S. at 173) (emphasis added). It follows that because EPA does not administer the ESA, it cannot "maladminister" the ESA as the Supreme Court in *Bennett* used that term. Dkt. 50 ¶ 32.

Here, Plaintiffs do not challenge the adequacy of any biological opinion that FWS provided following formal consultation on the Registrations, or any other act by a consulting agency administering the ESA. They raise no challenges that could amount to claims of maladministration reviewable under the APA per *Bennett*.

Instead, Plaintiffs challenge EPA's determination that the specific ESA Application Restrictions and ESA Buffers were necessary to comply with its obligations as an action agency

under ESA Section 7. Both the ESA Application Restrictions and ESA Buffers were necessary

for it to determine that the Registrations would have "no effect" on ESA-listed species, and

therefore meet its ESA Section 7 obligations. 16 U.S.C. § 1536(a)(2). These alleged failures are

akin to other alleged failures of an action agency to undertake required analyses or perform

duties that are required by the ESA and are, therefore, citizen-suit claims. *See e.g.*, *Water Keeper*

*All. v. U.S. Dep't of Def.*, 271 F.3d 21, 30 (1st Cir. 2001) (action agency's "failure to conduct a

biological assessment" is a citizen-suit claim); *Env't Prot. Info. Ctr.*, 255 F.3d at 1079; *Safari*

*Club Int'l v. Jewell*, 960 F. Supp. 2d 17, 59 (D.D.C. 2013) (claim alleging agency acting "in its

capacity as action agency" violated ESA Section 7 "arises under the ESA citizen-suit

provision"); *Ross*, 422 F. Supp. 3d at 16-17 (finding ESA citizen suit provision provided

adequate remedy for case involving action agency seeking to determine whether action,

including any necessary mitigation measures, "'may affect' a listed species (or critical

habitat).")"; *Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1177-79 (E.D. Cal.

2008) (recognizing claim against action agency for alleged failure to comply with ESA Section

7(d) was subject to 60-day notice requirement); *Cary v. Hall*, No. 05-cv-4363, 2006 WL

6198320, *13 (N.D. Cal. 2006) (where claim seeks relief from agency acting as action agency,

challenge must be brought pursuant to citizen suit provision, and 60-day notice requirement

applies); *Hawaii Cty. Green Party v. Clinton*, 124 F. Supp. 2d 1173, 1193-94 (D. Hawaii 2000).

In sum, in contrast to the circumstances in *Bennett*, Plaintiffs' claims concerning the Effects

Determinations, ESA Application Restrictions and ESA Buffers do not challenge a

maladministration of the ESA, but are, rather, substantive challenges to EPA's compliance with

ESA Section 7. *Cf. Oceana, Inc. v. Pritzker*, 75 F. Supp. 3d 469, 474 n.3 (D.D.C. 2014)

(explaining difference between action and consulting agencies under ESA). Accordingly, the

14

claims are subject to the 60-day notice requirement, which Plaintiffs failed to comply with.

These ESA-related claims in Counts I and II must be dismissed pursuant to Fed. R. Civ. P.

12(b)(1) or, in the alternative, 12(b)(6).

### III.   PLAINTIFFS' APRIL 5, 2021, CORRESPONDENCE DOES NOT CURE THEIR FAILURE TO PROVIDE 60 DAYS' NOTICE.

Plaintiffs may argue in their response brief that they satisfied the ESA notice requirement

by sending a letter to EPA on April 5, 2021. 04/05/21 Letter from B. Kempf to M. Regan,

Administrator, EPA (Exh. "1"). The Court should reject any such argument. In an effort to

address the notice issue and obviate the need to file a motion to dismiss, Counsel for Federal

Defendants raised the lack of a 60-day notice letter with counsel for Plaintiffs during a February

2, 2021, telephonic conference. 06/01/21 Declaration of J. Brett Grosko ("Grosko Decl.") (Exh.

"A") ¶ 2. During that call, counsel for Plaintiffs indicated that Plaintiffs believed that they were

not required to submit a 60-day notice letter because they had raised APA, not ESA, claims. *Id.* ¶

3. They stated their intention to provide judicial authority supporting that contention shortly to

facilitate further discussion. *Id.* ¶ 4.

Plaintiffs did not do so. Instead, Plaintiffs waited until a few hours before the Federal

Defendants' response to the original Complaint was due on April 6, 2021, to send an email and a

skeletal letter to counsel for Federal Defendants (not EPA) purporting to provide notice of their

intent to suit. *Id.* ¶ 5; Exh. "1". Plaintiffs' April 5, 2021, letter–which EPA did not receive until

May 12–does not provide valid notice for several reasons. Exh. "2" (envelope showing EPA

received 04/05/21 Letter from B. Kempf, to M. Regan, Administrator, EPA on May 12, 2021).

First, it does not even begin to explain why Plaintiffs believe (mistakenly) that EPA has

violated the ESA. Exh. "1." It merely states that the ESA Application Restrictions and ESA

Buffers "are unlawful (e.g., are arbitrary and capricious, an abuse of discretion, or otherwise not

in accordance with applicable law)." *Id*. at 2. While their letter incorporates the allegations of the original Complaint (Dkt. 1), their Complaint merely opined that the ESA Application Restrictions and ESA Buffers were "unnecessary." Dkt. 1 at 29, ¶ 121; Exh. 1. Nowhere do Plaintiffs explain why Plaintiffs believe those measures were supposedly "unnecessary" or beyond EPA's authority. Dkt. 50. Plaintiffs' letter lacks the specificity required to permit EPA to "identify and attempt to abate the violation." *Sw. Ctr. for Biological Diversity,* 143 F.3d at 522; *see also* Exh. "1"; *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002); *Hamilton v. High Mountain Mining Co.,* Civil Action No. 15-cv-0072-WJM-MEH, 2016 WL 11691174, at *5-8 (D. Col. Dec. 30, 2016). It is therefore facially defective. *Id*.

Moreover, the letter is a nullity for purposes of 16 U.S.C. § 1540(g)(2)(A), which requires written notice at least 60 days prior to "commenc[ing]" an action. Plaintiffs cannot satisfy this requirement by providing written notice while an action is pending. Instead, Plaintiffs would have had to dismiss their ESA claims, provide notice, and then waited 60 days after receipt of the notice before refiling. 16 U.S.C. § 1540(g)(2)(A). They did not (and have not) done so. Dkt. 50. Plaintiffs' belated and untimely correspondence therefore did not cure Plaintiffs' failure to provide EPA with the required notice. 16 U.S.C. § 1540(g)(2)(A)(i); *Building Indus. Ass'n of S. Cal., Inc.*, 785 F. Supp. 1020, 1022 (D.D.C. 1992) (notice requirement cannot be cured "by either a 60-day stay of the case or by applying equitable tolling principles") (citing *Hallstrom*, 493 U.S. at 26-28)).

**CONCLUSION**

For the reasons stated above, the Court should dismiss all claims in the Amended Complaint concerning EPA's compliance with Section 7 of the ESA for lack of subject-matter jurisdiction or failure to state a claim upon which relief may be granted, on the grounds that

16

Plaintiffs failed to provide EPA with its notice of intent to sue 60 days before filing their

Amended Complaint under the ESA's citizen suit provision. Moreover, to the extent Plaintiffs

wish to bring any new claims related to EPA's compliance with ESA Section 7, if the Court

dismisses the allegations concerning the Effects Determinations, ESA Application Restrictions,

and ESA Buffers without prejudice, Plaintiffs must provide EPA with a valid 60-day notice

letter, and then wait at least 60 days before filing a new complaint or amending the existing

complaint related to any such claims. That is the only way for Plaintiffs to provide EPA the

required 60-day "litigation free window" to attempt to resolve citizen-suit claims arising out of

EPA's compliance with the ESA Section 7 in registering Engenia, XtendiMax, and Tavium.[6]

Respectfully submitted on this 1st day of June, 2021.

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division

/s/ *J. Brett Grosko*
ANDREW KNUDSEN (D.C. Bar Number 1019697)
*Trial Attorney*
J. BRETT GROSKO (MD Bar Number 0106180001)
*Senior Trial Attorney*
U.S. Department of Justice
Environment & Natural Resources Division
150 M St., N.E.
Washington, D.C. 20002
(202) 353-7566 (Knudsen)
(202) 305-0342 (Grosko)
Andrew.Knudsen@usdoj.gov
Brett.Grosko@usdoj.gov

*Attorneys for Federal Defendants*

---

[6] *Proie*, 2012 WL 1536756, at *3-4; *Hallstrom*, 493 U.S. at 32 (requiring dismissal "after years of litigation and a determination on the merits"); *Salazar*, 670 F. Supp. 2d at 13-14 (rejecting plaintiffs' request to cure defect by amendment of complaint and dismissing claim); *Conservation Force v. Salazar*, 811 F. Supp. 2d 18, 34 (D.D.C. 2011).

*Of Counsel*

Michele Knorr
Scott Garrison
U.S. Environmental Protection Agency
Office of General Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2021, a copy of the foregoing was served by electronic

means on all counsel of record by the Court's CM/ECF system.

<u>/s/ *J. Brett Grosko*</u>
J. Brett Grosko